The first argument of the case this morning is No. 151580, Alfred E. Mann Foundation v. Cochlear Corporation. James. Good morning. May it please the Court. Claim 10, which is the focus of our appeal and the only claim that was found to be infringed in the judgment, requires displaying voltage. Cochlear systems measure voltage across the electrodes but display only impedance, not the voltage. So there's no literal infringement, and the District Court should have granted judgment on Claim 10. This case turns on claim construction. The entire claim has to be interpreted in context, not just certain words in isolation. And when the claim is read as a whole, it requires displaying a voltage measurement, regardless of whether impedance is also displayed. You have to go through the various parts of Claim 10 to arrive at that conclusion. You can't just look at one term. For example, the measurement of the voltage, it takes place in the implant. And once measured, the results of the voltage measurements are used to generate stimulator status indicating signals. They're then transferred to the external receiver. Then the stimulator status indicating signals are processed into processed status indicating signals. And then the claim calls for displaying said processed status indicating signals. It does. But before you get to that, it tells you what those processed status indicating signals are. First, they have to convey information about the status of the implanted stimulator. And second, they have to include the measurements that were made within the implanted stimulator. So that's before you get to displaying. Then you have to display those signals. And that requires displaying voltage because those signals include the voltage measurements that were made within the implanted stimulator. The Whereby Clause confirms that. There was a finding by the district court judge that it didn't provide any additional restrictions because the Claim 10 already required that the signals obtained by testing the stimulator have to be displayed. If you go through the sequence, then the Whereby Clause merely confirms that. If you conclude, as apparently the district judge did, that the display of voltage is not required before that point, that the processed status indicating signals don't include the voltage, then the Whereby Clause makes clear that that's a limitation. So either way, the voltage measurements have to be displayed. I guess we have a Figure 6, though, in the patent, right? Yes, we do. And it does show, at least with respect to that embodiment, you're displaying – you could be displaying a lot of different things. You could be displaying voltage measurements. You could be displaying impedance values, current levels. That's right. It looks like the district court's construction – I mean, let's face it, who really knows what a processed status indicating signal is? But it, at the very least, has enough wiggle room inside that term that it's not restricted to just a voltage measurement. And it looked like, from Claim 10, the applicant understood how to recite measurement of voltage because that's what, in fact, earlier in the claim he recited. So I guess there's a journey in the claim, right? There is. Between a measurement of a voltage all the way down to ultimately, after a lot of processing, displaying something called a processed status indicating signal. That's right. So I guess I'm left with why isn't this an appropriate construction then, in light of the specifications, contemplation of displaying all sorts of different things, and the fact that the claim itself doesn't call for displaying the voltage measurement? Your Honor, I disagree. I believe the claim does call for it, and it calls for it in two places. One, where it defines what the processed status indicating signals are. And in that case, they have to include the measurements, and those measurements refer back up to the voltage measurements. And then those signals have to be displayed, and the whereby clause confirms that that includes the results of the measurements. So it's repeated there in two places that the processed status indicating signals have to include those measurements. Now, I agree the specification is broader. There are other embodiments. But these claims were narrowed. They were narrowed during prosecution to recite voltage and to recite that these signals were displayed, and the signals were limited to voltage. I admit it's a narrow claim, but that was their choice. The examiner's reasons for allowance confirm that that's what the claims mean. You go through this journey, and I will say these claims are probably not the best written. But when you get through that journey and through the prosecution history, the examiner found, he said, the prior art does not show or suggest the measuring of the electrode voltage for external display. I don't think anything could be clearer as to what the claims mean and what those amendments meant. So there is no literal infringement because Cochlear's devices do not display voltage. They display impedance. And while impedance may be calculated from voltage, it's not the same thing. And they chose to limit their claimed embodiment to voltage. I guess getting back to your whereby clause argument, I mean, assuming for the moment that the whereby clause, in fact, is a limitation that deserves patentable weight, why can't the display of the impedance value provide information about the results of the voltage measurement? Because as we all know, there's a very clear relationship between voltage and impedance. It requires more than that. The whereby clause requires, well, first of all, the clause is displaying the signals whereby the status of the implanted stimulator may be made known. But that has to include the results of the measurements made within the implanted stimulator. So those results, that refers to voltage. Those measurements are voltage. Impedance isn't measured. And the claims were limited in that way. So the whereby clause specifically refers to the measurements made within the implanted stimulator. And that has to be voltage because those are the measurements that are made. So there is no literal infringement. Cochlear's devices don't display voltage. Simply knowing what the current is, even if that were, there's no evidence of knowing that the current was known. And so even under those circumstances, there can't be infringement. And the doctrine of equivalence is, well, there's prosecution history estoppel here. AMF distinguished this Claim 10. If you agree with our interpretation that it requires displaying voltage, they distinguish Claim 10 at the point of the exact point of difference between the claim and our system. And that's displaying the voltage measurement. It's their burden to show that there wasn't any estoppel, that the prosecution history doesn't have another objectively distracting reason. Just so I understand, the amendment that added the display limitation was in response to an indefiniteness rejection. There was also prior art rejection. And the amendment says that the claims should be in shape to be allowed over the prior art as well. But whether or not it's indefiniteness or prior art, it's a reason related to patentability, and that can raise an estoppel. Even if there are multiple reasons in the prosecution, as long as there is one that is related to it, it's not tangential. And I don't see how you can find that this amendment was tangential. Wouldn't it be tangential if the examiner said, I don't understand what you're doing with all these signals, please explain. And then the person came back with an amendment saying, okay, what we're going to do with these signals is we're going to display them. And then now we're going to fight over whether an impedance value is the equivalent of a voltage value. It feels like there's an argument why it would be tangential. Judge Chen, if that were the case, there might be an argument as to whether or not it was tangential. 112 rejections can result in estoppels, and it would depend on the particular factual circumstances. But that's not what we have here. We have the examiner saying that the prior art doesn't show or suggest measuring the electrode voltage for external display. How can that be tangential when that's the way the examiner interpreted the amendment? Okay. Let's hear from the other side because we have a cross appeal as well. Mr. Peterson. May it please the court. What the Alfred Mann Foundation asked the court to do in this case is to uphold infringement of the 9-1-6 patent. And I think if you uphold as to either Claim 1 or Claim 10, you can then move on to reinstate the damages and to reinstate the willfulness verdict. And if the court has a problem with that roadmap, then I think you get to the 6-9-1 indefiniteness issue. How is the damages issue before us? There's no final judgment on damages. Your Honor, there is a final judgment within the context of 1292C2 because what the court did is it specifically – Well, but the court included in its judgment a recitation with respect to the issue of vacating the damage award as part of the judgment it entered. And if you look at 1292 – We're not bound by the district court's recitation, though. We have to apply the law on whether there's an actual final judgment. And I recognize we have an odd final judgment statute that allows appeal before the case is always over. But it doesn't allow piecemeal appeals when damages aren't final. Well, but the major at toys case of this court says that there is a final – when all you have left to do is an accounting, and if the issue of damages has been determined before, that does not preclude jurisdiction under 1292C2. Right, which is why we have jurisdiction over the cross appeals about infringement and invalidity and the like. But we still don't have a final decision as to damages because it was vacated. Well, but – Let me ask you this hypothetical. Suppose we have all the facts here and the district court denied the JML, did everything else it did here, and vacated the damages awards. And the parties on their own decided we have no arguments whatsoever with the merits that we want to bring to the appeals court. But we want to appeal the vacature of damages now rather than wait for a final damages award. Do you think you could do that? I think under the major at toys case, which says that the finality principle of 1292C is broad enough to include a case where damages has already been tried but there were residual attorney's fee issues. And I also think it's consistent – But that's not a residual attorney fee issue. That's a damages issue. But the court decided that the damages issue is part of what is encompassed within the final judgment entered under 1292C2 in major at toys. And it's consistent with what the statute has intended. Don't we have a subsequent opinion after major at toys called Orenstein or something like that? You've got two, Favala and Orenstein. Neither of them have retreated from the case. Both are distinguishable because neither involved a judgment of patent infringement. Neither upset the principle of the case, which was that if damages were decided ahead of time, they would be included within the jurisdiction. And they talk about pen and jurisdiction in the subsequent Swint case. But this isn't a pen and jurisdiction principle. It's an interpretation of the statute, I think. So I'd like to go back for a minute and talk about claim 10, if the court would permit me, and respond to my colleague. Here, the key thing, if you look at this claim construction, it would have been the easiest thing in the world to say that there was going to be a display of damages. I'm sorry, of a measured numerical voltage number if that was what was intended. There's a whole series of processing steps which are clearly contemplated within the context of this claim. With respect to the whereby clause, let's be very clear. What the whereby clause talks about when it speaks of the result of the measurement is it talks about the consequence of practicing the patented method. And that's consistent with what the court's cases talk about when they say whereby clauses are not ordinarily limiting clauses. In addition, my colleague talks about this idea that there is measured information about the measurement. But let's keep in mind, if you step up to step 9, what's important is that what is being explored is conveying information regarding the status of the implanted stimulator or information regarding the measurements. Nothing about that suggests a numeric value. But getting back to the whereby clause, I mean, the whereby clause says essentially whereby the results of the measurements made within the implanted stimulator may be made known. So I understand that the term process status indicating signal sounds very broad and doesn't necessarily have to be restricted to a voltage measurement. But then maybe, just maybe, with your whereby limitation that you added, you arguably backed your way into a requirement that the process status indicating signal, whatever that is, it actually provides the results of the voltage measurement also be in the display. No, Your Honor. It doesn't do that because the result in this context is consequence. What is the consequence of doing this process? That interprets the claim consistently with figure 6, as Your Honor pointed out in one of your earlier questions. It also interprets the claim consistently with what a doctor wants to know, which is not necessarily a numeric value, but the number, but the status, that is, is the implanted stimulator working in a proper fashion? And then let's jump over for a minute and talk about the amendment process. Your Honor, there were two reasons for an amendment. One was indefiniteness in that nothing was displayed. If you were to get to prosecution history estoppel, I think clearly that's a place where the fact that someone indicates they're going to display process status indicating signals, that's clearly a place where you would be squarely within the tangential domain. But with respect to the examiner's comments, what he was doing was distinguishing prior art. First, examiner comments themselves don't limit claim, don't trigger limits under prosecution history estoppel. You've got to look at the amendment. If you go back and look at the amendment and the examiner's comments in context, they clearly show you that the limitations which were being carried out was, first, a limitation with respect to simultaneous stimulation of the electrodes, and second, real-time display. The real-time display is the critical distinctive feature, and you can read the examiner's comment perfectly consistently with that. It does not suggest there was any numeric voltage requirement that was imposed in this circumstance. I'd like to jump ahead and talk for a minute about the indefiniteness issues because, obviously, if you have a concern about jurisdiction, if you agree with us on the indefinite issues, you get the damage problem back because you've got even what would be a 1295 final judgment, I think, in that circumstance Judge Hughes. First, you have the matter of the Ohm's Law issue that is raised with respect to the indefinite issue on Claim 1 of the 616 patent. The judge made a fundamental mistake here in that he decided that there was an inadequate means plus function disclosure because Ohm's Law wasn't specified. It doesn't have to be. It doesn't have to be set out in prose. That's a point the court made in the Typhoon case, and so that was an error the court made, but there's even a more fundamental problem with what the court did, and that is that this case, with respect to the necessity of a means plus function type disclosure and algorithm disclosure, falls within the Katz exception because you could display voltage. There's undisputed testimony in the case that if you displayed voltage, you would need no algorithm, and so the determination of indefiniteness with respect to this claim was clearly erroneous on the court's part, and with respect to the court's alternative suggestion that there was some different ways you could calculate Ohm's Law, the record is clear that fundamentally it's a single formula. It can have minor variations, but some variations in how a formula like that are carried out, according to Dr. Young, would be immaterial in this context, and hence the record establishes that the court erred with respect to its indefiniteness determination on that claim. Z equals R plus JX, right? Yes. So you had an expert that said, well, the X would be tiny under these circumstances. I think he said immaterial or word to that effect, correct? Did the other side have any evidence? No. There are testimony that's saying, well, actually with these cochlear implant systems, the X would be arguably significant so that it would actually change the impedance value. No, and the burden was to establish indefiniteness to a clear and convincing degree, and there's really no conflict in the evidence with respect to that subject. Skipping over to the indefinite issue with respect to the 691 patent, here this is the inverse logarithmic algorithm. The court conceded that the disclosure suggested there was a need for such an algorithm. While it was expressed not only in prose, you'll find it in the specification, but most importantly, you'll find it in the diagrams, which both experts agreed, because once the sound is sent outside of the processor, it's clear it has to do an exponential conversion. That means both experts agreed that you had to have a logarithmic conversion on the front end. That's what the processing step was all about. The judge had some concern about whether there was an adequate disclosure of where that occurred, but at the claim construction stage, the dispute being whether it was in the processor or the immediately preceding A to D converter, at the claim construction stage, the court, it was construed that the A to D converter number 28 did nothing more than the conversion and thus did not do any sort of additional processing. I thought you had an expert that was a little bit equivocal at one point. It could be done in the A to D converter, or it could be done in the microprocessor. As a hypothetical matter, he was asked that, and he testified that here it's done in the processor, and the specification confirms that to be the case here, Your Honor, because whenever we have a conversion being shown that is more than just a conversion, the diagram shows you. If you look at 64 and 207 in the steps in the patent, you'll see that, and the specification also tells you that all of the processing is done within the processor. So if you reinstate those things, I think then we do definitely get back to damages, and I don't – I still think if you look at – Before you use our rebuttal time, can you tell me what you want us to do on willfulness? On willfulness. Do you want us to – I assume you just want us to vacate and send it back because HALO and Stryker have changed the landscape for what the district court should do. At a minimum, you'd do that, but I think here you should do more. I think here – You're going to ask for more than you're going to get probably, but – Well, but you asked me what I'd like you to do. What you should do in this case is the verdict is based on instructions better than the defendant deserved. Those instructions under subjective willfulness totally satisfied the totality of the circumstances sort of inquiry, which survives post-Stryker. Even though the Supreme Court just told us that this is a question for the district court, you want us to make that determination under this new standard that the district court should make in the first place. Well, the district court still gets to take step two. We never got to that step, and here step one was tried to the jury without objection and tried and tried, and I don't think the Supreme Court has cleared up how you deal with that first step in terms of decision making. What do you mean by step one and step two? Step one being the determination of willfulness as a factual matter. So here that was tried, and there's ample evidence to support it, and the only reason the court gave for setting aside subjective willfulness has nothing to do with Claim 10. So you think our old two-part subjective objective test survives HALO and Stryker? I don't know, Your Honor. I don't think that's true at all. What I do think is that in a case where willfulness is tried under instructions at subjective level, which asked an examination of the totality of the circumstances, that survives HALO, Stryker, and a jury having made that determination, you should keep it and send the case back for the step two district court discretion under 284. I would expect that you would have said that HALO makes clear that defenses to infringement or validity that are generated during the litigation are no longer relevant for purposes of defending a willfulness allegation. Absolutely. If all that matters is whether at the time of knowing about the patent, did they at that time, pre-complaint, have any understanding of a good, reasonable defense against infringement? I agree with you, Your Honor. Therefore, that would be something that would need to be explored below because the district court didn't have that appreciation of the law at that time because that wasn't the law. It's clear that both of the defenses that the district court imposed under the objective prong did not come into existence until five years after the lawsuit was filed, so I think you can finish that work here. There's nothing to remand, to reconsider with respect to that. I'm just suggesting that the way subjective willfulness was tried, the standard the jury considered was essentially the HALO standard of totality of the circumstances and that the court can preserve that decision. I present my time. Thank you, Mr. Peterson. We'll save your rebuttal time. Mr. Jakes. Thank you. If I could start with indefiniteness. On the 616 Claim 1, you have to look at the claim language. It's a process or means for processing the status indicating signals, plural, to derive information about the operation of the stimulator. How do we get to Ohm's Law from that? There isn't an algorithm that corresponds to this particular function of processing the status indicating signals. They have come up with Ohm's Law and said, well, that would be one thing you could do. Well, okay. But the scope of the claim is much more than that. It talks about processing these signals. But what do you think should have been included? This is, of course, a constant problem as to where the lines are drawn in terms of the programming and so on for these steps. I agree, Your Honor. Something should have been disclosed. There's nothing. There's nothing that describes the processing that goes on in this microprocessor that corresponds to processing the signals. Did they say that this is just standard procedures? No. There is something clearly that is going on because one of the experts describes such things as aligning, formatting, averaging, all types of things that could go on to process the signals. But there's none of that that's disclosed. So just focusing on Ohm's Law and saying, well, that's enough of an algorithm, it really doesn't satisfy the claims. Same with AMF's argument that simply measuring voltage and passing voltage through. I guess if we were just to go to Figure 6, and the possible things that could end up being a processed status indicating signal, one could be impedance, and then that's where Ohm's Law comes in. One could be voltage, and we already have the voltage measurement, so it's really just getting passed through. And I think the point the other side is trying to make is there's no algorithm in that circumstance that actually needs to be disclosed because you wouldn't be using any algorithm. And so there's no structure that needs to be actually disclosed when you've already got the voltage measurement to display the voltage measurement. So I guess what I'm trying to figure out is you're trying to get me to be concerned. What should I be concerned about? Well, let me address the voltage transmitting to voltage issue first. That doesn't meet the claim language. The claims require processing the signals. That's not processing. That's just passing it through. So if no algorithm is required, that's fine because it doesn't correspond to the claim language of processing the status indicating signals. I did mention it says signals. They're plural. So simply doing one of these, whether it's calculating impedance, is not necessarily enough. The scope of that particular limitation is broader than that. It has to have an algorithm that corresponds to the entire function there, and simply coming up with one, that's a partial algorithm at best. The voltage to voltage, not an algorithm because it doesn't actually process. But the Ohm's Law, it's not anywhere mentioned. We're talking about claim definiteness, not enablement, not whether someone would know how to do this. But what's the scope of the claim? What corresponds to the processor means for processing these signals? What is the microprocessor doing? It's a black box. You have some inputs that are described, some outputs are described. They say it could be very simple. The patent doesn't say what it is, and that's really what the problem is. If it said Ohm's Law, would that be good enough for you? If it said this function for processing the status-indicating signals, the function corresponding to that is computing impedance, calculating impedance using Ohm's Law, we might have an issue. But it doesn't say anything like that. It's just generic. But their experts said that any experienced person would know that. Your Honor, we're not talking about enablement. We're not talking about whether somebody could do this. We're talking about the scope of the claim, and how do we know what the microprocessor has to do? It could do anything. And simply going in and saying, Well, here are some of the results that the processor achieves. Therefore, we can come up with an algorithm. That's backwards. We need to know what the processor is doing. That's what the law requires. And the same for the other, the 691 patent as well. It requires generating data indicative of an audio signal. That corresponds to the microprocessor, so there has to be some programming. The problem is there's nothing about inverse logarithmic conversion that's described. That's just their expert saying, Well, someone would know to do that. Did your expert agree that you would use logarithmic conversion on this end because you go exponential on the back end? Not necessarily. So there are many things that could be done. But I'm just trying to figure out if your expert actually agreed to that. I believe he did agree that that could be done. But I don't think it's limited to that. And there are many ways to actually do that function. But we don't actually know that the microprocessor is doing that function. It could be in the A to D converter. And if that's the case, then where is the structure corresponding to generating data indicative of an audio signal that has to be in the microprocessor if it's being done somewhere else? We have the same problem. We have just this general function of generating data and nothing in them that corresponds to that. And what they have done is they've picked out something and said, Well, somebody would know to do this somewhere. It has to be in the microprocessor. And they go through all these steps. But it's indefiniteness we're talking about, not whether somebody could figure out a way to do it, but what are the scope of these claims and what corresponds to this particular means? We don't know. It's just treated as a black box. On the jurisdictional question on damages, there's no case that says you can do what the cross-columns are trying to do here. The Majorette Toys case, it has been considered dicta. The issue of pendant jurisdiction is not here. I don't see how a non-final order, such as a new trial order, gets dragged along by 1292C. And finally, back on our appeal on the display of voltage, counsel said that the amendment was made to distinguish the prior art based on real-time display. Well, there's nothing about real-time in these claims. I heard him say that it's easy to say to display a voltage. Well, it would be easy to say real-time display as well, and that's not in there. It's not obvious from the prosecution history. Quick question on willfulness. Yes. Was there any evidence presented to the jury that your side had developed the view of this voltage display versus impedance display non-infringement argument before the complaint was filed? No, there is no evidence of that. But I think that it focuses too much, first of all, on Claim 10 because there was a reason that was given in the correspondence as to why there was no infringement. The letter that was sent did not identify any claims. It identified products that were not sold in the U.S., and that was the response. It took three years for them to respond. I'm not sure what the court should do in all willfulness cases, whether everyone should be sent back. But if this court is not planning to send everyone back, this is a case where you can affirm based on what the district court said because the court found there was no subjective willful infringement. He focused on the right time frame, and there's considerable overlap with what HALO requires. There's really nothing left to do other than to decide whether that's an abuse of discretion. Otherwise, every case is going to have to be sent back after HALO. Okay. Any more questions for Mr. Jakes? Thank you, Mr. Jakes. Thank you. Mr. Peterson. Thank you, Your Honor. With respect to the disclosure on the 616 Claim 1, Ohm's Law, Figure 6 and Table 7 are a disclosure of the fact that you have to get to impedance, and that's something which one can readily calculate. There's also a reference at Line 35, 10 to 15. The patent claims use of a tester that computes an impedance measurement based on the voltage measured by the implant and the peak output current. And importantly, in its claim construction brief, Cochlear wrote that it does not dispute that the 616 patent describes measuring a voltage and using Ohm's Law to calculate an impedance. With respect to the argument that there's some sort of differing voltage processing that might go on, I don't think that's ever been argued here before in this case, so I really am not in a position to debate about it. The point is that if you simply pass along the voltage measurement, you fall within the CATS exception and you don't have to do any kind of processing, which means that the indefinite finding has to be set aside with respect to that claim. But the claim function requires some kind of processing of the status indicators. I beg your pardon? I'm sorry. The claim calls for it. The plain language of the claim calls for processing of the status indicating signal. It does, and I think there's filtering that happens in order to help facilitate the display, and that would be true even as to a voltage display. But the record, Your Honor, I didn't make my point very well. The record doesn't really develop that particularly because it wasn't disputed here before. This is an argument which has been presented at the first point here. The inquiry, then, is what would one skilled in the art understand from the information that is found in the specification? And this court's case is the all-voice case is a good example. You didn't require prose. You didn't require a specific designation of a principle or an equation. You looked primarily at charts, and here you can look at figures. You can look at what I've quoted you, and you can look at the concession that's been made, and I think that ought to be sufficient to establish that the indefiniteness finding here needs to be set aside. Turning to indefiniteness with respect to the 691 patent, with respect to in response to one of Judge Chen's questions, you asked about what their experts said in this case. Dr. Stevenson testified at Appendix 2592 and 93 that you could determine that there was a logarithmic equation that had to be done because once you got through the processor, you knew that it had to become exponential on the other side. So we have a situation where the experts are in agreement with respect to the necessity for engaging in this sort of event, this occurrence. And there was a lot of testimony below that this is not like a V equals IR situation. There's a lot of different kinds of logarithmic algorithms that could be employed. And that brings us then, I think, to the court's case law, Your Honor, which says that there's a wonderful statement in the Typhoon case, which is you don't have to tell expert people how to do things and to burden specifications with unnecessary detail. There can be implementation choices that have to be made. I think one of the most interesting cases, to my way of thinking, is if you read Judge Bryson's opinion in the Aristocrat case where he's talking about the earlier Dossal case, and he's pointing out that if you tell a person skilled in the art generally how to go about accomplishing something, the fact that he has mathematical choice or methods by which to do it is not a reason to find indefiniteness. And part of the reason for that is that what you're concerned about with indefiniteness is to avoid generic claiming. That's not going to happen here because there's other ways you could process this sound wave, linear fashion, for example, so you wouldn't create that problem in the first place. So you don't implicate the concerns that underlie the indefiniteness principles. And also, this is not the point of innovation of this technology. This is a little, you know, we're starting to talk about something which is akin to the Intel case where the court said that if you have a patent which calls for use of a chair, you don't have to have a lot of discussion about how the chair might be put together by an expert, and this is squarely in that situation. With respect to the jurisdictional point, I'd like to just return to another point that I neglected to mention, which is that we also have here a 54B certification from the district court, and as we pointed out, the Ninth Circuit, the regional circuit law that is applicable on this kind of a question has a very broad view of the existence of jurisdiction under 54B when you have residual damage inquiry that has to be conducted in this case. Isn't 54B about having multiple claims in a case and then splitting claims into two buckets and then maybe allowing completed litigation on some of the claims to go forward on appeal? You're correct as a general matter, Your Honor. Well, that's the language of 54B. You're correct. All I'm saying is that if you look at the way the Ninth Circuit has interpreted that principle in the case we've cited, and you've certainly got a certification from the district court, this is the kind of situation which fits within the rule, which is this court, Congress clearly intended under 1292C2 to eliminate the need for proceedings which would be mooted by an appellate decision, and that's where we are if we are correct that the damages flow from any one of these claims as I think the record establishes, and we didn't have a chance to talk too much about today, but you have the benefit of the briefs. So unless the court has any other questions, I see I've run over my time. Anything else that you wanted to add? Thank you. Thank you, Mr. Peterson. Mr. Jacobs, the case is taken into submission. Thank you.